**ASHEEM CHARLES, Plaintiff**
**v.**
**DONALD WOODLEY, Defendant**

Civil No. 178/2003

Superior Court of the Virgin Islands

Division of St. Croix

November 21, 2005

Lee J. Rohn, Esq., Law Offices of Rohn and Cameron, LLC, Christiansted, St. Croix, U.S. Virgin Islands, *Attorney for Plaintiff*.

Richard H. Hunter, Esq., Hunter, Cole & Bennett, Christiansted, St. Croix, U.S. Virgin Islands, *Attorney for Defendant*.

CABRET, *Judge*

## MEMORANDUM OPINION

(November 21, 2005)

THIS MATTER is before the Court on Plaintiff's Motion for Extension of Time Pursuant to Federal Rule of Civil Procedure 4(m). The Defendant opposes Plaintiff's Motion for Extension of Time, arguing that the 120-day period allowed by Federal Rule of Civil Procedure 4(m) for serving the Defendant expired, and therefore the case should be dismissed. For the following reasons, the Court shall grant Plaintiff's Motion for Extension of Time.

## I. FACTS

On February 13, 2002, Plaintiff, Asheem Charles, was allegedly injured while riding as a passenger in the back of a pickup truck, driven by Mr. Ulric Lang. Plaintiff purportedly suffered injuries when the vehicle in which he was riding collided with a vehicle being driven by the Defendant, Donald Woodley. In his Complaint filed on March 19, 2003, Plaintiff claims that the Defendant negligently operated his vehicle on the day of the accident, consequently causing the collision and the Plaintiff's injuries.

Plaintiff tried to serve Defendant on July 17, 2003 by delivering a copy of the Summons and Complaint to his mother, Elizabeth Woodley, at Building 21, Apartment 168, St. Thomas, Virgin Islands. Plaintiff mistakenly believed that Defendant resided at that location based on the results of a skip trace, after a failed attempt to serve the Defendant at the address listed in the accident report. Defendant did not file an answer, and on November 7, 2003 Plaintiff filed a Request for Entry of Default. On December 5, 2003, the Clerk of the Superior Court entered default against the Defendant. On December 11, 2003, counsel for the Defendant entered a special appearance, and filed a Motion to Quash Service and Vacate Entry of Default. The Motion claimed that the Defendant is a captain in the Virgin Islands Army National Guard, and was, at the time, deployed in Cuba. The Motion argued that the service was defective because the Summons and Complaint were served upon the Defendant's mother, Elizabeth Woodley, at an address where the Defendant never resided. On January 7, 2004, the Court granted Defendant's Motion,

quashed service and vacated the entry of default. To date, Plaintiff has not served Defendant.

## II. DISCUSSION

The Superior Court applies its own rules, and, to the extent that they are not inconsistent, the Federal Rules of Civil Procedure. SUPER. CT. R. 7. Superior Court Rule 27(b) provides, in pertinent part, that "the summons and process shall be served in the same manner as required to be served by Rule 4 of the Federal Rules of Civil Procedure ... ." SUPER. CT. R. 27(b). Therefore, the Court will apply Federal Rule of Civil Procedure 4. Federal Rule of Civil Procedure 4(m)[1] requires that a summons and complaint be served on a defendant within 120 days after the filing of a complaint. Since the Complaint was filed in this case more than two years ago, service is outside of this time period. The Court must therefore determine whether the Plaintiff can be granted an extension of time to serve Defendant, or whether Defendant is entitled to a dismissal of the claims against him.

### A. Motion for Extension of Time Under the Federal Rules

In support of his Motion for Extension of Time, Plaintiff contends that he tried to obtain the Defendant's address for purposes of service. He stated that Defendant's attorney had indicated that he would contact the Defendant to determine whether the Defendant would allow him to accept service. Defense counsel disputes that he made such a statement. Plaintiff further claims that he made diligent efforts to locate the Defendant, namely hiring a private detective to ascertain Defendant's address, and issuing a subpoena duces tecum to Mr. Felix Durrand, the head of the Oliver Benjamin School, where Defendant's wife allegedly

---

[1]    Rule 4(m) provides:

TIME LIMIT FOR SERVICE. If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, *shall dismiss* the action without prejudice as to that defendant *or direct that service be effected within a specified time;* provided that if the plaintiff shows good cause for the failure, the court *shall extend the time for service* for an appropriate period. This subdivision does not apply to service in a foreign country pursuant to subdivision (f) or (j)(1).

FED. R. CIV. P. 4(m) (emphasis added).

works. Mr. Durrand, however, did not respond to the subpoena duces tecum.

Defendant opposes Plaintiff's request for an extension of time, arguing that Rule 4(m) requires dismissal of the action if a summons and complaint are not served upon a defendant within 120 days. Defendant cites, *inter alia, Tourism Industries, Inc. v. Professional Underwriters Insurance, Co.*, 149 F.R.D. 515 (D.V.I. 1992), for the proposition that Plaintiff must show good cause for his failure to serve within 120 days, or the action must be dismissed. Alternatively, Defendant cites *Farrington v. Benjamin*, 100 F.R.D. 474, 20 V.I. 470, 471 (D.V.I. 1984) (applying Rule 6(b)(2)), in support of the position that a request for enlargement of time made after the expiration of the 120 day period must be accompanied by a showing that the failure to act was the result of excusable neglect.[2]

■ What Defendant fails to note in his opposition to Plaintiff's Motion is that these opinions applied former Federal Rule of Civil Procedure

---

[2]   The Court does not find Defendant's citation of the *Farrington* opinion to be persuasive, given the legal issues involved in the present case. The analysis in *Farrington* did not concern Rule 4(m); rather it involved Federal Rule of Civil Procedure 25(a)(1). Rule 25(a)(1) provides that upon a plaintiff's death in a personal injury action, substitution of a proper party may be made within 90 days. In *Farrington,* the plaintiff's estate failed to timely file its motion for substitution, and the motion was therefore denied.

The *Farrington* court noted that the advisory committee's note accompanying the 1963 amendment to Rule 25(a)(1) provided that the amendment was designed to eliminate the harshness of the previous rule. Before the amendment, the rule required the dismissal of the action if substitution of parties did not occur strictly within ninety days. The 1963 amendment, however, removed Rule 25(a)(1) from the excepted class of time limits that could not be extended, and subjected Rule 25(a)(1) to the general rule for enlargements of time periods, Rule 6(b). *Farrington*, 20 V.I. at 472, n.2.

Rule 6(b) requires that requests for enlargement of time made after the expiration of the specified period be granted only where the movant's failure to act was due to excusable neglect. For reasons explained in the body of the opinion, Federal Rule of Civil Procedure 6(b) does not necessarily apply to the failure to serve within 120 days because the Rule 4(m) inquiry effectively subsumes the Rule 6(b) inquiry; the previous Rule 4(j) "good cause" standard was often analogized to the Rule 6(b)(2) "excusable neglect" standard, *and* any perceived harshness of the Rule 4(j) time limit is ameliorated by the court's new Rule 4(m) discretion to extend time even without good cause. Alternatively, Rule 4(m) contains both the timing and the standards for service of process. In this respect, Rule 4(m) is distinguishable from Rule 25(a)(1) and others like it, because it does not need Rule 6(b) to supply the standard for granting extensions.

4(j). At the time the cases that Defendant cites were decided, Rule 4(j) was the source of the 120-day period for service of process. Rule 4, however, was amended in 1993 and the 120-day period is now included in Rule 4(m). The amendment did not alter the amount of time that a party has to complete service, but it did change how courts approach situations in which service is not accomplished within 120 days. Prior to the 1993 amendment, Rule 4(j) required dismissal of a case if a party was not served with process within 120 days, unless plaintiff showed good cause. *Petrucelli v. Bohringer and Ratzinger*, 46 F.3d 1298, 1304 (3d Cir. 1995). Conversely, the amended, re-designated Rule 4(m) requires a court to extend the 120-day period for good cause. Additionally, Rule 4(m) supplies courts with discretion to either dismiss the case or extend the time period for service when there is no showing of good cause. FED. R. CIV. P. 4(m); *see also Fredericks v. Tourism Industries*, 33 V.I. 23, 26 n.8, 1995 V.I. LEXIS 37 (Terr. Ct. 1995) (citing *Petrucelli*, 46 F.3d at 1305); 4B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1137 (3d ed. & Supp. 2005). In this respect, the application of Rule 4(m) is less severe than its predecessor, as the Court can permit an extension even if there is no "good cause" to explain why service was not timely completed.

 ██ The Court's conclusion that Rule 4(m) contains a discretionary allowance for an extension may, at first blush, appear to be at odds with the excusable neglect standard of Federal Rule of Civil Procedure 6(b), suggested by Defendant.[3] Rule 6(b)(2) of the Federal Rules of Civil

---

[3]  Between Rule 6(b) and Rule 4(m), there are four standards: cause, excusable neglect, good cause, and discretion. As a result, the timing directives indicating the applicable standard may lead to seemingly conflicting results under each rule. Federal Rule of Civil Procedure 6(b) provides:

ENLARGEMENT. When by these rules or by a notice given thereunder or by order of court an act is required or allowed to be done at or within a specified time, the court for cause shown may at any time in its discretion (1) with or without motion or notice order the period enlarged if request therefor is made before the expiration of the period originally prescribed or as extended by a previous order, or (2) upon motion made after the expiration of the specified period permit the act to be done where the failure to act was the result of excusable neglect; but it may not extend the time for taking any action under Rules 50(b) and (c)(2), 52(b), 59(b), (d) and (e), and 60(b), except to the extent and under the conditions stated in them.

Procedure generally governs motions for enlargements of time made after the expiration of a time period contained in any rule not exempted from the reach of Rule 6.[4] It directs that an enlargement may only be granted "where the failure to act was the result of excusable neglect." FED. R. CIV. P. 6(b)(2). Rule 6(b) of the Federal Rules of Civil Procedure, however, does not apply in the Superior Court because the Superior Court has its own rule, a near identical provision contained in Superior Court Rule 10(a). Superior Court Rule 10(a)(2) adopts the same excusable neglect language for motions made after the expiration of a specified time. SUPER. CT. R. 10(a). It provides in a rule entitled "Enlargement of time,"

> When an act is required or allowed to be done at or within a specified time —
>
> (a) The court for cause shown may at any time in its discretion:
> 1.  With or without notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous order of the court.
> 2.  On motion, permit the act to be done after the expiration of the specified period if the failure to act was the result of excusable neglect. ...

SUPER. CT. R. 10(a). Because there has been little discussion of Superior Court Rule 10(a) in this jurisdiction, however, cases assessing the interplay between Rule 6(b)(2) and Rule 4(m) are instructive by analogy.

---

FED. R. CIV. P. 6(b). Rule 6(b)(2)'s excusable neglect standard may only be triggered by a motion for enlargement of time filed by a plaintiff. The inquiry on a defendant's motion to dismiss for failure to serve or on a court's order to show good cause on its own initiative is distinct. *See Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 (5th Cir. 1985). The time limits and standard for a motion dismiss are wholly contained within Rule 4(m). Thus, Rule 6(b) does not apply to motions to dismiss filed under Rule 4(m) and 12(b). The standard for such motions is good cause. Without a good cause showing, it is within the court's discretion to dismiss or extend. FED. R. CIV. P. 4(m). Where, as here, there is both a motion for enlargement filed by the plaintiff and a motion to dismiss filed in opposition by the defendant, it is possible that Rule 6(b)(2) may play a role. As explained later in this opinion, however, it is not mandatory that courts consider the excusable neglect standard after dispensing with the good cause inquiry.
[4]    Rule 4 is not among the rules excluded from the application of Rule 6(b).

■ In part because of the softening of the harshness of Rule 4(m)'s predecessor, Rule 4(j), it is no longer necessary to apply the excusable neglect standard to motions made for enlargement to accomplish service after the expiration of the 120-day service period. While in the past Courts applied both Rule 4(j) and Rule 6(b) to motions to dismiss for failure to serve and to motions for enlargement of time to serve, legal scholars attributed this procedural anomaly to Rule 4(j)'s harsh requirement of dismissal in the event of a failure to show good cause. *Winters v. Teledyne Movible Offshore, Inc.*, 776 F.2d 1304, 1305 n.10 (5th Cir. 1985) (citing 10 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE: CIVIL § 1138 at 261 (1985 Pocket Part)). With the liberalizing of Rule 4(m), there is reason and support for now limiting the inquiry to its contents. *See Petrucelli*, 46 F.3d at 1302-03 (panel did not consider Rule 6(b) in majority opinion affirming the denial of motion for extension and the granting of a dismissal).

Many courts have analogized the *good cause* and *excusable neglect* standards. *See MCI Telecomm. Corp. v. Teleconcepts*, Inc., 71 F.3d 1086, 1097-98 (3d Cir. 1995); *Petrucelli*, 46 F.3d at 1312 (Becker, J. concurring) (citing to 2 JAMES W. MOORE, MOORE'S FEDERAL PRACTICE ¶ 4.18[2] (2d ed. 1994)); *Braxton v. United States*, 817 F.2d 238, 241 (3d Cir. 1987) (recognizing that although the term good cause is undefined, it is at least as demanding as the excusable neglect standard). *See also Dominic v. Hess Oil V.I. Corp.*, 841 F.2d 513, 517 (3d Cir. 1988) (Virgin Islands decision following *Braxton*). Grafting the excusable neglect standard from Rule 6(b) to the discretionary standard in Rule 4(m) would artificially heighten the standard set forth in the 1993 amendments to Rule 4. Had the drafters intended to impose an excusable neglect standard if good cause was not shown, they could have expressly adopted it as in Rule 6(b).[5]

---

[5] The drafters were certainly were familiar with the standard. In fact, in the committee's note, the drafters acknowledge that Rule 6(b) previously afforded relief for plaintiffs who could not show good cause for their failure to serve within the prescribed period. *See* FED. R. CIV. P. 4(m) advisory committee's note to 1993 Amendments. Furthermore, the drafters identify the expiration of the statute of limitations as a ground for refusing to dismiss for failure to serve, even absent a showing of good cause. *Id.* Allowing for an extension in those circumstances would be incongruent with the excusable neglect standard, where the only justifiable delays are attributable to the actions the parties.

## B. "Good Cause" Under Federal Rule of Civil Procedure 4(m)

Under the present language of Rule 4(m) there are two categories of plaintiffs: those who have good cause for their failure to serve within 120 days, and those who do not. Following the 1993 amendment, plaintiffs demonstrating good cause for their failure to serve are entitled to an extension of time to serve the defendant. For plaintiffs lacking good cause, the rule mandates the court to either dismiss the action as to the defendant not timely served, or direct that service be accomplished within a certain time.

Several courts in this jurisdiction have attempted to define good cause for failure to serve within the specified period. *See generally Dominic*, 841 F.2d at 517 (concluding that good cause is at least as demanding as excusable neglect and that the factors which go to excusable neglect may also be considered to show good cause); *Tourism Indus., Inc. v. Prof'l Underwriters Ins. Co.*, 149 F.R.D. 515, 516-17 (D.V.I. 1992). Although these cases precede the 1993 Amendments to *Rule 4*, they have continued vitality for defining the good cause standard that previously existed in Rule 4(j). According to *Tourism Indus., Inc,* courts should consider whether reasonable efforts were made to effect service. 149 F.R.D. at 517. Referring to the comments of then Rule 4(j), the Third Circuit Court of Appeals acknowledged that Congress considered a defendant's evasion of service as a quintessential example of good cause for plaintiff's failure to serve. *Dominic*, 841 F.2d at 516 (citing *Lovelace v. Acme Markets, Inc.*, 820 F.2d 81 (3d Cir. 1987)). Inadvertence and lack of diligence of counsel, however, normally will doom an attempted showing of good cause. *Dominic*, 841 F.2d at 516. More recently, the Third Circuit has identified factors courts may consider for existence of good cause that confirm previous inquiries. *MCI Telecomm. Corp.*, 71 F.3d at 1097 (citing with approval *United States v. Nuttall*, 122 F.R.D. 163, 166-67 (D. Del. 1988) for the proposition that "courts have considered three factors in determining the existence of good cause: (1) reasonableness of plaintiff's efforts to serve (2) prejudice to the defendant by lack of timely service and (3) whether plaintiff moved for an enlargement of time to serve [prior to the expiration of the period prescribed by the rule]"). *MCI Telecom Corp.* cautions, however, that the primary inquiry shall focus on the reasonableness of a plaintiff's efforts. 71 F.3d at 1097.

210

To bolster his argument that Plaintiff failed to establish good cause, Defendant also cites several cases demonstrating the rigidity of the 120-day period in warranting dismissal. Except for *Fredericks v. Tourism Industries*, 33 V.I. 23, 1995 V.I. LEXIS 37 (Terr. Ct. 1995), however, all of the cited cases were decided before the 1993 Amendment. In *Fredericks,* the court dismissed the plaintiff's case for failure to comply with the 120-day period for service under Rule 4(m). The plaintiff moved for reconsideration of the order of dismissal, but the court denied the motion as it was jurisdictionally barred due to its untimely filing. In its denial of the motion for reconsideration, the Court opined as to what constitutes an appropriate level of diligence under the good cause provision of Rule 4(m).

In *Fredericks,* the plaintiff filed his complaint on May 2, 1992. On November 22, 1993, the plaintiff moved for substituted service by publication. The motion was denied because the plaintiff failed to exercise due diligence in attempting to personally serve the defendant, and because publication in *The St. Croix Avis,* a local newspaper with general circulation in the Virgin Islands, was not reasonably calculated to notify to the defendant, a Colorado resident. Thereafter, the plaintiff twice tried to serve defendant by certified mail, but the defendant did not claim the certified mail. Finally, on December 9, 1994, the plaintiff in *Fredericks* personally served the defendant with a summons and complaint.

In *Fredericks,* the court reasoned that Rule 4(m) requires counsel to be diligent in completing service of process. *Fredericks,* 33 V.I. at 27. The opinion cited several cases to reinforce the gravity of a plaintiff's failure to comply with the 120 day requirement, however, all the cited cases were decided before the 1993 amendment while the prior Rule 4(j) still provided the stricter 120-day rule. Although the *Fredericks* court recognized that Rule 4 was amended in 1993, it did not address the effect that this amendment had on the 120-day service requirement of Rule 4. While *Fredericks* serves as a good cautionary statement of the potential result of a plaintiff's failure to comply with the 120-day service requirement, the case does not address the greater leeway given to a plaintiff after the 1993 amendment. Accordingly, the Court's best guidance in deciding whether to grant a plaintiff an extension of time to serve a defendant is the language of Rule 4(m) itself, which grants the Court discretion to extend the time by which Plaintiff may serve the

Defendant, even absent a showing of good cause. The Court will now apply the standards of Rule 4(m) to the instant case.

## C. Extension of Time for Service Under Federal Rule of Civil Procedure 4(m)

■ *Petrucelli* instructs that a court must determine whether good cause exists before it resorts to the discretionary determination. 46 F.3d at 1305. The facts presented fail to demonstrate that the Plaintiff had good cause for the delay. While Plaintiff informed the Court of several efforts he took to locate Defendant's address, this does not constitute a sufficient showing of diligence under the good cause standard. Most of these efforts occurred after the expiration of the 120-day service period. Furthermore, Plaintiff's failure to contact the military to confirm Defendant's enlistment and deployment status is too glaring an oversight for this Court to determine that good cause existed, even if the Court were to consider efforts outside of the Rule 4(m) 120-day period.

Plaintiff did not move for an enlargement of time during the 120-day period prescribed by Rule 4(m). The only date-specific attempted service in the record is the delivery of the Summons and Complaint to Defendant's mother, Elizabeth Woodley, on St. Thomas on July 17, 2003, 120 days after the filing of the Complaint. This location[6] was the product of an inaccurate skip trace performed by Plaintiff's counsel and/or a private detective. Plaintiff argues that he served Elizabeth Woodley because an attempt to serve the Defendant at the address listed in the accident report—3-7 Bonne Esperance—was unsuccessful. That St. Croix address was apparently an abandoned trailer.[7] This limited skip

---

[6]    An affidavit by Elizabeth Woodley provides that Defendant never resided at the location where Plaintiff attempted service. (Dec. 17, 2003 Aff. of Elizabeth Woodley.)

[7]    An affidavit of Hector Maldonado states that "3-7 Bonne Esperance, St. Croix," was "an abandoned trailer that no one had lived in for months." (Feb. 26, 2004 Aff. Hector Maldonado.) Defense counsel suggests, without substantiation, that the Defendant's address may have actually been 3-7 Bonne Esperance, *St. Thomas.* Plaintiff has not attempted to serve the Defendant at that address on St. Thomas, nor is there any indication that this is the true address of the Defendant. It is significant, that if Defendant was deployed soon after the alleged accident, it is possible that the listed address could have been correct at that time and abandoned later when the process server attempted service sometime in 2003. As an aside, it remains unclear whether Defendant maintains any physical residence within the Territory where he may receive service. If Defendant does not, Federal Rule of Civil Procedure 4 provides mechanisms for effecting service

trace investigation is the extent of the Plaintiff efforts before expiration of the 120-day service period. Even considering Plaintiff's efforts outside of the period prescribed by Rule 4(m), however, Plaintiff's efforts do not provide grounds for establishing good cause.

A significant delay in this case occurred as a result of Plaintiff's erroneous assumption that Defendant resided with Elizabeth Woodley and was successfully served. The Plaintiff's limited further attempts to discover Defendant's address in February 2004 after previous service was quashed on January 7, 2004, through Elizabeth Woodley, the Defendant's mother, and Felix Durrand, the purported employer of the Defendant's wife,[8] do not cure this deficiency. Finally, there is the fact that Plaintiff failed to contact the appropriate military service branches to ascertain information on Defendant's whereabouts, or even to confirm his deployment status, after learning that Defendant may be an active duty member of the armed forces. This is a significant oversight of an obvious source of relevant information. The mistaken assumption and failure to contact the armed forces preclude a finding of good cause for the Plaintiff's delay.

Even if good cause is not shown, however, this Court still has the ability to grant the Plaintiff additional time to serve the Defendant under Federal Rule of Civil Procedure 4(m). Rule 4(m) provides that if service is not effected within 120 days, the Court shall either dismiss the case or direct that service be effected within a specified time. FED. R. CIV. P. 4(m). The Court finds that it is in the interests of justice to grant a brief extension in this case. The claims asserted by Plaintiff are subject to a two-year statute of limitations under subsection 31(5)(A) of title 5 of the Virgin Islands Code. V.I. CODE ANN. tit. 5, § 31(5)(A) (1997). The accident that is the basis of this dispute allegedly occurred on or about February 13, 2002, and this case has been pending for more than two years. Since the statute of limitations has expired on Plaintiff's claim,[9] a

---

should Plaintiff conclude that Defendant is in fact presently outside of the Territory and is subject to service.

[8] The name "Desiree Woodley" is mentioned in memoranda as the wife of the Defendant. Her number is listed in the United States Virgin Islands telephone book, easily accessible to both parties.

[9] Although not raised by the parties, Plaintiff had from January 7, 2004, the date service was quashed, to February 13, 2004 to serve Defendant before the expiration of the statute of limitations.

dismissal of the action by this Court would extinguish Plaintiff's potentially legitimate claim.[10] This is exactly the type of situation that the drafters of the 1993 amendment to Rule 4(m) contemplated for a discretionary extension, as the advisory committee's note to that subsection provides "[r]elief may be justified ... if the applicable statute of limitations would bar the refiled action." Additionally, it is likely that Defendant has actual notice of the pending Complaint, and while he must be properly served, he will not be significantly prejudiced by a short extension of time for service. To this end, the Court believes that it is in the interest of justice to give the Plaintiff a brief extension to serve Defendant. Therefore, the Court will grant the Plaintiff an additional sixty days in which to serve the Defendant.

## III. CONCLUSION

Applying Federal Rule of Civil Procedure 4(m), the Court determines that the circumstances of the case indicate that granting Plaintiff an additional sixty days to serve Defendant is in the interests of justice. While the Court finds Plaintiff's lack of diligence in serving the defendant troublesome, it hesitates to deny a potentially meritorious claimant his day in court without providing him the opportunity to perfect service, particularly where it is likely that Defendant has actual notice of the claim being asserted against him.

---

[10]  In the Motion to Quash Service and Vacate Entry of Default, Counsel for Defendant stated that Defendant is a captain in the Virgin Islands Army National Guard, and was deployed in Cuba as of December 11, 2003. Counsel further stated that Defendant was "activated in June 2003." There is no documentary evidence on the record to either substantiate or contradict this claim.

If Defendant is in fact deployed in active military service outside of the Territory, then section 205 of the Soldiers' and Sailors' Civil Relief Act of 1940, 50 U.S.C.A. App. § 525 (1990), applies to these proceedings and a stay may be required. However, based on the record that is presently before the Court, the Court cannot conclude whether Defendant is currently deployed in active military service.